UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TANEISHA J. OBO A.R.R., | § | |
| | § | |
| Plaintiff, | § | Case # 6:21-cv-6408-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Taneisha J. ("Plaintiff") brings this action on behalf of A.R.R., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying A.R.R.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 10) is **DENIED**, and the Commissioner's motion (ECF No. 11) is **GRANTED**.

## <u>BACKGROUND</u>

On September 1, 2015, Plaintiff protectively filed an application for SSI child's benefits on behalf of her minor daughter, A.R.R., alleging disability beginning September 30, 2013, due to attention deficit hyperactivity disorder ("ADHD"), behavioral problems, learning disability, and asthma. Transcript ("Tr.") 143-148, 173. The application was initially denied on November 17, 2015, after which Plaintiff requested a hearing. Tr. 64-75, 78-80. On February 2, 2018,

Administrative Law Judge Brian Kane ("the ALJ") conducted a hearing in Rochester, New York. Tr. 12, 29-49. Plaintiff and A.R.R. appeared and testified at the hearing and were represented by Joseph Paladino, an attorney. Tr. 12.

The ALJ issued an unfavorable decision on March 9, 2018, finding that A.R.R. was not disabled. Tr. 12-24. On January 14, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. Thereafter, Plaintiff filed a civil action in the United States District Court for the Western District of New York. *See* Case No. 6:19-cv-6188. On December 26, 2019, Plaintiff obtained a judgment remanding the case for further proceedings. Tr. 510. A new hearing was held on April 23, 2021, again before Administrative Law Judge Brian Kane. Tr. 435-59. On May 18, 2021, the ALJ issued a second unfavorable decision (Tr. 411-34), after which this action was timely filed seeking judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

2

## II.     The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed A.R.R.'s claim for benefits under the process described above and made the following findings in his May 18, 2021 decision:

1. The claimant was born on August 10, 2007. Therefore, she was a school-age child on August 14, 2015, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since August 14, 2015, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), learning disorder, and asthma (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a)).

6. The claimant has not been disabled, as defined in the Social Security Act, since August 14, 2015, the date the application was filed (20 CFR 416.924(a)).

Tr. 414-29.

Accordingly, the ALJ determined that, for the application for SSI protectively filed on August 14, 2015, A.R.R. is not disabled under section 1614(a)(3)(C) of the Social Security Act. Tr. 429.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ erred in finding that A.R.R.'s impairments did not result in either a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. *See* ECF No. 10-1 at 9-18. Specifically, Plaintiff argues that the ALJ did not properly assess A.R.R.'s functioning in the domains of acquiring and using information and attending and completing tasks and also failed to consider that A.R.R. was enrolled in special education, and her teachers noted continuing problems across these domains.[1] *See id.*

The Commissioner argues in response that the ALJ gave very thorough explanations for how the medical, educational, and testimonial evidence supported his finding that A.R.R. had "less than marked" limitations in the domains of acquiring and using information and attending and completing tasks, and the ALJ's decision was supported by substantial evidence. *See* ECF No. 11-1 at 9-16.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

---

[1] Because Plaintiff's brief focuses solely on the domains of acquiring and using information and attending and completing tasks, the Court need not address the other functional domains in this opinion. Furthermore, Plaintiff has waived any arguments challenging the ALJ's findings in the remaining four domains. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ thoroughly considered all the evidence in the record and gave very thorough explanations for how the evidence supported his finding that A.R.R. did not have a "marked" limitation in two or more of the six domains or an "extreme" limitation in one domain of functioning. The ALJ considered the evidence documenting varying levels of functionality and acknowledged A.R.R.'s impairments, but he properly determined that despite her impairments, A.R.R. had less than marked limitations in the domains of acquiring and using information and completing tasks. The ALJ considered A.R.R.'s mental status examinations showing generally normal findings and average intelligence; intelligence test results showing scores in the low average to average range; the opinion of the consultative examiner that A.R.R. had only mild limitations in her ability to learn; and school records showing mostly passing grades. Tr. 416-29. Furthermore, with respect to the educational evidence, the ALJ noted that A.R.R. was described as a very energetic student who loves school, tries hard, and was making academic progress, but the ALJ also noted that excessive absences from school was a continuing factor impeding A.R.R.'s academic progress. Tr. 420, 228, 746-47,763-67. Based on the evidence as a whole, the ALJ reasonably concluded that A.R.R. had "less than marked" limitations in the domains of acquiring and using information and attending and completing tasks.

In September 2009, at the age of 25 months, A.R.R. was evaluated for early intervention services based on concerns regarding speech and language development. Tr. 370-84. Testing showed a mild delay in auditory comprehension, a low average score in expressive

communication, a mild delay in total language skills, and a severe delay in NYS Clinical Clues-speech. *Id*. A.R.R. was determined to be eligible for early intervention services. Tr. 380.

On June 11, 2012, Plaintiff took A.R.R. to the Emergency Department at Strong Memorial Hospital, due to "uncontrollable" behavior. Tr. 314-19. A.R.R. had a psychiatric evaluation with Antoinette Jakobi, M.D. ("Dr. Jakobi"). Tr. 317-18. Dr. Jakobi noted a history of oppositional and disruptive behaviors. Tr. 318. Dr. Jakobi's mental status examination revealed A.R.R.'s ability to follow directions when willing to do so, with no thought disorder and no sign of depression. Dr. Jakobi also noted A.R.R.'s ability to answer questions appropriately and noted no sign of psychosis. *Id*. Dr. Jakobi diagnosed oppositional defiant disorder and recommended outpatient therapy. *Id*.

On January 22, 2013, A.R.R. was seen for a well-child visit at Unity Pediatrics. Tr. 350-55. The record indicates the visit was "chaotic" due to "[A.R.R.'s] behavior and her hyperactive brother." Tr. 350.  It was noted that A.R.R. had some improvement on Adderall for approximately one month, but her behavior was getting worse again. *Id*. Plaintiff reported that she was trying to arrange transportation for A.R.R.'s mental health clinic visits. *Id*.  In January 2015, Plaintiff reported that she had stopped A.R.R.'s ADHD medication because she "did not like the idea of [A.R.R.] taking medication for behavior;" however, she was now having problems in second grade. Tr. 337. Her prescription for Adderall was renewed. Tr, 339.

During a well-child visit in November 2015, Douglas Liano, M.D. ("Dr. Liano"), noted that A.R.R. was "hyperactive and impulsive." Tr. 405. The record indicates that "mom [had] trialed a period off meds," and A.R.R. was unfocused, distracted and inattentive. Tr. 403.  Plaintiff and A.R.R.'s school agreed that A.R.R. should be back on medication for ADHD. *Id*.

On February 16, 2017, Dr. Liano noted that A.R.R. was distracted and inattentive at school. Tr. 395. It appears that A.R.R. was not taking any medication for ADHD at that time because Plaintiff was "skeptical" regarding medication for A.R.R.'s behavioral problems. Tr. 395-96.

On February 9, 2018, Dr. Liano noted that A.R.R. "continued to struggle with her behavior both at home and school." Tr. 635. Plaintiff reported that A.R.R. was falling behind academically and had problems in math and reading, and writing. *Id.* Plaintiff again stated that she wanted to avoid medication to address A.R.R.'s behavioral problems and would prefer to work with a behavioral therapist. Tr. 636. In April 2018, A.R.R. was noted to be still struggling at school. Tr. 633. Although Plaintiff again stated she was interested in pursuing behavioral therapy for A.R.R., the record indicates only a "future" referral to Behavioral Pediatrics. Tr. 634. In September 2018, A.R.R. was doing well at home and school with no health concerns. Tr. 629.

Educational records document that A.R.R.  had significant attendance issues from 2014 through 2021. Tr. 687-90, 697, 713-16, 763-67, 791, 795-802, 887, 900-01, 914. In the 2013-2014 school year, A.R.R. was absent 31 days and tardy 17 days. Tr. 713. In 2014, A.R.R.'s school submitted an attendance referral to the Rochester City School District due to her unexcused absences. Tr. 763-67. The referral documented Plaintiff's indication that the absences were due to doctors' appointments, but that she failed to submit supporting documentation and failed to realize "how important notes are." Tr. 764. In the 2014-2015 school year, A.R.R. was absent 29 days and tardy 16 days. Tr. 713. In the 2015-2016 school year, A.R.R. was absent 15 days and tardy 23 days. In the 2016-2017 school year, A.R.R. was absent 10 days and tardy four days, and she was absent 21 days from a summer scholars' program that lasted 30 days. Tr. 713, 767. In the 2017-2018 school year, A.R.R. was absent 20 days and tardy five days. Tr. 713. In the 2018-2019 school year, A.R.R. was absent seven days and tardy one day. Tr. 713.

In June 2018, the Committee on Special Education referred A.R.R. for psychological evaluation due to academic concerns and to "assess her present levels of functioning and determine appropriate supports." Tr. 896, 914. Nidhi S Pino, M.E.D Certified School Psychologist ("Ms. Pino"), evaluated and tested A.R.R., reviewed her academic records, and documented her concerns regarding A.R.R.'s attendance, stating that "[A.R.R.'s] school attendance has been inconsistent for many years and is clearly having an impact on her learning." Tr. 900-01. In the 2019-2020 school year, A.R.R. was absent four days. Tr. 713. In February 2021, the school district reviewed A.R.R.'s special education services and noted that "[h]er attendance has been very sparatic [*sic*]." Tr. 697.

A Weschler Intelligence Scale for Children, Fifth Edition ("WISC V") was conducted on June 11, 2018. Tr. 821-30. A.R.R. had an average processing speed score; low average verbal comprehension and fluid reasoning; very low working memory scores; and extremely low visual spatial score. Tr. 822-23. Her full-scale IQ was seventy-six, which was in the very low range. Tr. 823. A Wechsler Individual Achievement Test-Third Edition ("WIAT III") indicated average reading comprehension, pseudoword decoding, and numerical operations; above average essay comprehension, and below average math problem solving and word reading. Tr. 831-39. Ms. Pino noted that A.R.R.'s cognitive testing elicited scattered results from extremely low to average ability, "therefore her overall ability must be interpreted with caution," as A.R.R. presented a complex learning profile. Tr. 898. Ms. Pino found that, "despite some cognitive deficits, [A.R.R.] has compensated for those weaknesses academically." Tr. 900. Ms. Pino further noted that "concerns pertaining to inattention/hyperactivity, impulsivity, learning problems/executive functioning, and defiance/aggression were endorsed within the classroom arena," and stated that "[A.R.R.'s] attentional deficits may warrant further investigation by a pediatrician to determine the impact on her educational performance." Tr. 900.

Special education teacher Jennifer Alford ("Ms. Alford") submitted progress reports regarding A.R.R.'s progress towards her Individualized Education Program ("IEP"). Tr. 746, 789-93. In January 2019, A.R.R. was progressing satisfactorily in mathematics "demonstrating study progress with rounding" numbers, "a great deal of growth in creating and analyzing bar graphs," and was able to correctly answer questions about 70% of the time. Tr. 747. In April 2019, A.R.R. achieved two of her mathematic goals, accurately rounding numbers and independently creating and setting up bar graphs. Tr. 793. She continued to make satisfactory progress towards her other mathematics goals through repetition, and she was "almost there!" Tr. 793 In June 2019, A.R.R. was making gradual and satisfactory progression towards her reading goals. Tr. 789-91. Ms. Alford noted that A.R.R. was able to "catch her decoding mistakes at the time she made them . . . use her decoding strategies to help her pronounce the word correctly . . . did not require a great deal of prompting to correct . . . [and] was able to correctly decode the words given with prompts 89% of the time and with minimal assistance 75% of the time." Tr. 790.

However, Ms. Alford noted that A.R.R. would be making more progress towards her reading comprehension goals "if she was on time for her resource group everyday [as she] often arrive[d] 15-20 minutes late." Tr. 790. A.R.R. was progressing gradually with mathematics as she was able to dissect and solve one step word problems with prompting 85% of the time and dissect and solve two-step word problems 70% of the time. Tr. 791. However, because A.R.R. was often late for her resource time, "instead of focusing on the current problem the group is working on, she races to finish the work that she missed and makes careless mistakes." Tr. 791.

The ALJ evaluated A.R.R.'s functioning across the six functional domains listed in the regulations and found that A.R.R. demonstrated less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with

others, and health and physical well-being; and no limitations in the ability to care for herself and moving about and manipulating objects. Tr. 419-29. The ALJ therefore found that A.R.R.'s limitations did not functionally equal the criteria of any listed impairment, which requires marked limitations in two domains or extreme limitation in one domain, and therefore, concluded that A.R.R. was not disabled. *Id*.

As previously noted, Plaintiff argues that remand is warranted because the ALJ did not properly assess A.R.R.'s functioning in the domains of acquiring and using information and attending and completing tasks. *See* ECF No. 10-1 at 13-18. However, as shown below, the ALJ's findings in these two domains are supported by substantial evidence in the record.

### a)  Acquiring and using information domain.

The domain of acquiring and using information considers how well a child can learn and use information, and the Commissioner's regulations include examples of activities typical of children within defined age groups. 20 C.F.R. § 416.926a(g). A.R.R. was a school age child at the time of her application and was an adolescent at the time of the ALJ's decision. School-age children (between the ages of six and 12) should be able to learn to read, write, do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). A child should be able to use these skills in daily living situations at home and in the community by, for example, reading street signs, telling time, and counting change. *Id*. Additionally, in assessing a child's functioning in the acquiring and using information domain, the ALJ may consider a child's ability to: demonstrate and understand words that describe concepts, such as space, size, or time; rhyme words and sounds; remember what he learned in school the day before; use age-appropriate language; develop "readiness skills" the same as peers, such as counting, reciting the alphabet, and scribbling; read,

write, and do arithmetic at the appropriate grade level; comprehend written or oral directions; follow simple instructions; use simple or complex sentences; and explain things. SSR 09-3p, 6.

For adolescents (between the ages of 12 through 18), the child should be able to continue demonstrating what they have learned in academic assignments in classroom discussion or laboratory experiments and apply what they have learned in daily living situations without assistance when going to the store, using the library, or taking public transportation. 20 C.F.R. § 416.926a(g)(2)(v). The ALJ may also consider the child's ability to comprehend and express simple and complex ideas using increasingly complex language, plan for future activities, and apply knowledge in practical ways that will help in employment. SSR 09-3p, 6.

Plaintiff argues that the ALJ's decision failed to account for the special education services A.R.R. received and the continuing problems she displayed. *See* ECF No. 10-1 at 9. Plaintiff cites to A.R.R.'s IEP plans and the fact that she received extra support from her teachers. *See id*. at 12-13. However, the ALJ's decision reflects that he properly considered this evidence, as well as evidence documenting the impact of A.R.R.'s excessive absenteeism on her academic growth. *See* Tr. 416-29, 687-90, 697, 713-16, 763-67, 725-33, 726-28, 746-48, 771-78, 781-93, 795-802, 821-33, 896-1014.

For instance, the ALJ discussed the teacher questionnaires in the record, acknowledging that A.R.R. received special education services and noting that her teachers assessed "serious" to "very serious" problems in acquiring and using information. Tr. 416, 300-07, 617-24, 152-57. Specifically, the ALJ noted that fifth grade teacher Dale Spafford ("Mr. Spafford") completed a teacher questionnaire in January 2018, wherein he identified that A.R.R. was receiving small group instruction with a reading specialist and a math specialist. Tr. 424-25, 300. Mr. Spafford also noted "serious" or "very serious" problems in comprehending and doing problems and problems and

"serious" or "obvious" problems in understanding school and content vocabulary, reading and comprehending written material, expressing ideas in written form, learning new material, and recalling and applying previously learned material. Tr. 424-25, 301.

The ALJ noted that third grade teacher Ms. Hawkins had assessed similar limitations in October 2015. Tr. 424-25, 180-81. The ALJ also considered a teacher questionnaire completed by special education teacher Renee Schurr ("Ms. Schurr") on April 8, 2021. Tr. 424-25, 617-18. Ms. Schurr noted that A.R.R. was in the 8th grade but was reading, writing, and performing math at a 3.5 grade level. Tr. 617. Ms. Schurr noted that A.R.R. had an obvious (but less than severe) problem acquiring and using information. Tr. 618. The ALJ gave the questionnaires completed by Ms. Hawkins, Mr. Spafford, and Ms. Schurr "some weight" based on their "up-close interaction" with A.R.R. and the consistency of their assessments. Tr. 425. As the ALJ noted, however, the educational records also indicated that A.R.R.'s excessive absenteeism was a significant factor impeding her academic progress. Tr. 416, 226, 252.

In addition, the ALJ discussed intelligence test results showing scores in the 70s and 80s, except for A.R.R.'s visual spatial score and the WIAT-III test showing only below average to average scores.  Tr. 416, 821-30, 831-39. The WIAT-III test noted average reading comprehension, pseudoword decoding, and numerical operations; below average math problem solving and word reading; and above average essay composition. Tr. 909. The ALJ also discussed A.R.R.'s treatment notes, which generally documented normal thought content, logical thought processes, normal cognition, and average intelligence (Tr. 388, 633, 635, 653, 666); school records noting generally passing grades (Tr, 684, 727) and the ability to dissect and solve one-step word problems with teacher prompts 85% of the time and two-step word problems roughly 70% of the time (Tr. 791); and consultative examiner Dr. Luna's findings of adequate language skills, coherent and goal

directed thought processes, intact attention and concentration, ability to recall 3 out of 3 objects immediately and after a five-minute delay, and average intellectual functioning (Tr. 359-60). Tr. 419-20, 423-25. Thus, the ALJ sufficiently discussed this evidence and reasonably concluded that A.R.R. had no more than a moderate limitation in understanding, remembering, and applying information.

Moreover, the ALJ was not required to expressly consider and analyze each piece of evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (ALJ not required to reconcile every shred of evidence). Rather, the ALJ must adequately explain his conclusions, sufficient for this court to determine that the ALJ's decision was based on substantial evidence. *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Substantial evidence is . . . a very deferential standard of review— even more so than the 'clearly erroneous' standard."). Here not only did the ALJ clearly point to the evidence that supported his conclusion, but also discussed contradictory evidence and explained how it was accounted for within this domain. Tr. 418-29.

Although Plaintiff disagrees with the ALJ's finding and tries to argue that the ALJ should have reached a different conclusion, Plaintiff has not met her burden of showing that the ALJ's finding was not supported by substantial evidence. *See Brault*, 683 F.3d at 448 (It is not enough for the plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. The plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record).

Plaintiff also argues that the ALJ improperly considered A.R.R.'s attendance, suggesting that A.R.R.'s teachers did not identify attendance as a concern in formulating their opinions. *See* ECF No. 10-1 at 14-15. Plaintiff is wrong. As documented above, the record documents significant

attendance issues from 2014 through 2021. Tr. 687-90, 697, 713-16, 763-67, 791, 795-802, 887, 900-01, 914. In 2018, school psychologist Ms. Pino specifically noted that A.R.R.'s attendance was a significant issue that was creating a gap in learning and negatively affecting A.R.R.'s "acquisition of information" and was "clearly having an impact on her learning." Tr. 900-01. Special education teacher Ms. Alford noted that A.R.R. often arrived 15-20 minutes late for her reading comprehension resource group and would be making more progress if she was on time every day. Tr. 790. Although A.R.R. was progressing gradually with mathematics, because she was often tardy, she had to race to finish missed work and made careless mistakes. Tr. 791. In 2021, the school district continued to note that A.R.R.'s attendance was very sporadic, making it difficult to assess her educational options. Tr. 697.

The ALJ is entitled to consider and weigh the entirety of the nonmedical and medical evidence, and to credit evidence of the claimant's functioning over other evidence that may suggest more significant limitations in a domain. *See Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 388 (2d Cir. 2010). The evidence of record in this case substantially supports the ALJ's finding that A.R.R. had less than marked limitations in this domain, and the Court finds no error. *See Lowry v. Astrue*, 474 F. App'x 801, 805 (2d Cir. 2012) (rejecting plaintiff's contention that ALJ failed to meaningfully explain his reasons for not crediting certain evidence in finding that child's impairments did not functionally equal listings).

**b)  Attending and completing tasks domain.**

For similar reasons, the Court finds that substantial evidence also supports the ALJ's finding that A.R.R. had less than a marked limitation in the domain of attending and completing tasks. Plaintiff again argues that the ALJ's finding of less than marked limitations in this domain

was unsupported simply because A.R.R. was enrolled in special education and her teachers continued to document issues. *See* ECF No. 10-1 at 18.

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well she can begin, carry through, and finish activities, including the pace at which the child performs activities and the ease with which she can change them. 20 C.F.R. § 416.926a(h). "Attention" involves regulating levels of alertness and initiating and maintain concentration, as well as the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. 20 C.F.R. § 416.926a(h)(1). School-age children should be able to focus their attention on a variety of situations in order to follow directions, remember and organize school materials, and complete homework and classroom assignments. 20 C.F.R. § 416.926a(h)(iv). They should also be able to change activities or routines without distracting themselves or others, stay on task and in place when appropriate, sustain attention well enough to play group sports, read by themselves, and complete chores, and complete transition work like getting ready to change tasks. *Id*. Adolescents should be able to pay attention to longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(v).

Here too, the ALJ properly considered the totality of the evidence in assessing A.R.R.'s ability to attend and complete tasks and reasonably concluded that the record supported a finding of a less than marked limitation in this domain. In determining that A.R.R. had a less than marked limitation in this domain, the ALJ cited to A.R.R.'s ADHD treatment, Plaintiff's testimony, teacher observations, IEP plans, and psychological testing. Tr. 418-29.

The ALJ found Plaintiff's testimony and statements not fully consistent with the evidence and provided citations to substantial evidence in the record to support his finding. Tr. 427. For

example, the ALJ observed that medical treatment notes documented intact attention and concentration, ability to recall three out of three objects immediately and after a five-minute delay. Tr. 417, 357-60. The ALJ also discussed A.R.R.'s treatment notes, which generally documented normal thought content, logical thought processes, normal cognition, and average intelligence (Tr. 388, 633, 635, 653, 666); school records noting generally noted passing grades (Tr, 684, 727) and the ability to dissect and solve one-step word problems with teacher prompts 85% of the time and two-step word problems roughly 70% of the time (Tr. 791); and consultative examiner Dr. Luna's findings of adequate language skills, coherent and goal directed thought processes, intact attention and concentration, ability to recall 3 out of 3 objects immediately and after a five-minute delay, and average intellectual functioning (Tr. 359-60). Tr. 419-20, 423-25. As the ALJ reasonably determined, these findings suggest that A.R.R. has greater functional abilities than noted by Plaintiff.

The record also reflects that in January 2015 Plaintiff discontinued A.R.R.'s prescribed ADHD medication because she "did not like the idea of [A.R.R.] taking medicine for behavior," and A.R.R. was having problems in second grade, including the inability to sit still. Tr. 337. In October 2015, Ms. Hawkins observed that Plaintiff was not giving A.R.R. her ADHD medication, which Ms. Hawkins felt A.R.R. "need[ed] to stay focused." Tr. 186. In November 2015, Dr. Liano noted that A.R.R. was "hyperactive and impulsive." Tr. 405. The treatment note indicates that Plaintiff had discontinued A.R.R.'s ADHD medication, and A.R.R. was unfocused, distracted and inattentive. Tr. 403. Plaintiff and A.R.R.'s school agreed that A.R.R. should be back on medication for ADHD. *Id*. However, at a February 2017 visit, Dr. Liano noted that A.R.R. was distracted and inattentive at school, and the record appears to indicate that A.R.R. was still not taking any medication for ADHD at that time. Tr. 395-96.

The ALJ also noted that the record was "devoid of any ongoing or consistent follow-up treatment for [ADHD and learning disorder]; instead, the record shows simply irregular visits to primary care physicians for medication adjustment." Tr. 420, 635-39, 890. Education records documented steady progress towards goals and multiple recommendations to seek treatment for inattention and hyperactivity with a pediatrician. Tr. 419-22, 726-28, 746-47, 795-802, 771-78, 781-88, 789-93, 896-906.

As above, while the record indicates that A.R.R. had some problems in this area, Plaintiff does not point to any evidence the ALJ overlooked, and which would compel a finding that A.R.R. had marked or extreme limitations in this domain. *See* ECF No. 10-1 at 17-18. Contrary to Plaintiff's assertion, the fact that the record contains some findings that A.R.R. had difficulties in this domain does not undermine the ALJ's decision that A.R.R. had a less than marked limitation in attending and completing tasks. Thus, substantial evidence supports the ALJ's finding, and while Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand.

Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d); *see also Brault*, 683 F.3d at 448. The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran*, 569 F.3d at 112. As discussed above, there is such evidence. Accordingly, Plaintiff has not met her burden of showing that remand is warranted for the ALJ to reconsider A.R.R.'s functioning in this domain. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the

record could lead only to the same conclusion, there is no need to require agency reconsideration.").

Finally, contrary to Plaintiff's suggestion, A.R.R.'s participation in a special education program does not establish the presence of marked limitations in functioning. *See generally* ECF No. 10-1 at 9-19. The regulations expressly state that the fact that a child receives special education services does not establish disability. *See* 20 C.F.R. § 416.926a(b)(7)(iv); *see also McDaneil*, 2019 WL 3500855 at *6 (citing *Grant v. Colvin*, No. 12-cv-962 (MAT), 2015 WL 3746707, at *6 (W.D.N.Y. June 15, 2015) ("The fact that Plaintiff was classified as special education does not, standing alone, warrant a finding of a marked limitation")). As discussed above, the ALJ properly considered the entire record, including A.R.R.'s participation in a special education classroom, and reasonably concluded that A.R.R. showed less than marked limitations.

Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. As discussed above, Plaintiff's mere disagreement with the ALJ's findings does not warrant remand. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). As previously noted, the question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v*, 569 F.3d at 112. As explained above, there is such

evidence here. The Court accordingly finds no error in the ALJ's determination that A.R.R. is not disabled.

**<u>CONCLUSION</u>**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE